Ruffin, C. 3.
 

 The opinion of t.he court is, that upon the defendant’s oivn evidence there is a legal presumption of a gift to his son of the cattle and hogs in ' controversy.— No one can hesitate as to the true nature of the transaction between the defendant and his son, who knows any thing of the ordinary feelings and conduct of parents towards their sons, when como to man’s estate, and will look at what took place between thesé persons. It is preposterous to call a young gentleman his father’s overseer, who, upon returning home after completing
 
 his
 
 education, is put by a wealthy father into possession of a fine estate, properly stocked with slaves, and with the usual supplies of the various kinds of cattle and provisions, which, in conversations with.his friends and in transactions of business, the father calls his son’s, and with which the father does not interfere for nearly four years. On the contrary, during all that period, the sou acts in the management of the estate and in .the use of every thing made or being on it, as if they were his own ; disposing of all the crops and profits, and they, too, were of great value, at his own will and to his own use. It is true, the land and slaves did not become his; because they do not pass but by deed or writing. But before the act of ISIS the slaves would have been the son’s property; and even since that act, if young Mr. Skinner had remained in possession of them, until his father’s death, intestate, they would have been his, as an advancement, from the beginning.
 
 Stallings
 
 v
 
 Stallings,
 
 1 Dev. Eq. 298. It was among our earliest reported adjudications, that if, when a child went to house-keeping, a parent put a slave or other chattel into the child’s possession, the property was to be deemed in the possessor. The soundness of the principle consists in its certain conformity to the intentions of almost all men under
 
 *172
 
 circumstances, and by its necessity, as a protection
 
 to
 
 in bestowing care and labor on what cannot be ta- ° ken from them, and as a protection also to persons dealing w¡tjj ([ie children. In
 
 Farrel
 
 v
 
 Perry,
 
 1 Hay. 2, Judge Williams laid down the rule, that putting a chattel into a child’s possession is a gift in law, unless the contrary be proven ; and one of the reasons for it was, that otherwise creditors might be drawn in by false appearances. The same reasoning is given more at large in the subsequent case of
 
 Carter
 
 v
 
 Rutland,
 
 1 Hay. 97; where it is said, that when the possession remains with the child for a considerable time, it will be necessary for the father to prove very clearly, that it was expressly and notoriously understood not to be a gift; and, further, that the peace of families and the security of creditors were greatly concerned in the law being thus settled.
 

 To no case could those reasons be more applicable than to the present. The only thing that is supposed to qualify the legal inference from the sou’s possession, that there was a gift, is, that, when the father put
 
 the son
 
 info possession and gave him half the crop then growing, he added, “ and he would give him the property, if he found he knew how to manage it, and conducted himself properly.” But that does not repel, but rather fortifies, the legal presumption, that both the father and son, as well as the rest of (he world, considered
 
 the
 
 crops and
 
 the
 
 various kinds
 
 of stock,
 
 except the slaves, the property of the son. It is expressly stated, that the son made what use of the crops he thought proper, and appropriated them to his own use. That was for three or four years ; and during the same time the stocks also remained in his possession, without any complaint of his sons conduct or claim of property by the father, baton the contrary, with repeated declarations, that he had given all that property to his son, aud that it was liable to his debts. How can it be pretended to the contrary? A father may lend his son the use of land and negroes ; but who can suppose, that any one would ever think of borrowing for four years a stock of sheep, hags and cows, with a view ef
 
 *173
 
 returning the same specifically, or accounting for the crease
 
 1
 
 Nothing of the kind was contemplated in this case; for the son must have killed the original stock or most oí it ior sale or consumption, and bred more upon his own provisions and with his own care. The discovery of the son’s embarrassments induced the defendant to resume the possession of the land and negroes, and tempted him also to claim again the other chattels, as being in some sort appurtenant to the plantation. But, until that discovery, all parties regarded them as an advancement to the son, and, therefore, as his property; and although the land and negroes might be resumed, the other chattels could not, to the prejudice of the son and his creditors.
 

 In our opinion, therefore, the jury ought to have been instructed that the property was in the son, and consequently passed to the plaintiff by the Sheriff’s sale.
 

 That conclusion renders it perhaps, unnecessary to consider, whether the subsequent observations to the jury were correct or not; since, even if they be erroneous, the verdict being right in point of law, upon the whole case, ought not to be disturbed.
 
 Atkinson
 
 v Clark, 3 Dev. 171. Yet, as we do not concur in those observations, and the contrary might be inferred from our silence, it seems to be incumbent on us to state the opinion entertained by the court.
 

 The learned Judge, upon the assumption that there had been no gift, gave it a? his opinion, that, if the defendant knew his son was obtaining credit upon the faith of this property and took no steps to correct the mistake, but suffered his son to go on in obtaining a false credit, the lather would not be permitted to set up his title against the plaintiff;. provided, however, the debt, ior which the sale to the plaintiff was made, was in fact contracted on the faith of this property. For imposition on particular creditors by false representations of the son’s credit, the defendant might be made liable in a proper action. But even an express fraud of that kind would not work a change of property, so as to render what was really the property of the father subject to an exe_
 
 *174
 
 cution against the son. If this was a loan and not a gift to the son, we think the defendant would have been entitled to a verdict. In our opinion, indeed, the law is clear, that it was a gift. But that is noton the ground of actual decep-ion on particular persons, as to whom, and not as to others, it is to. be deemed the son’s property. The rule rests on the tendency to deceive the world, arising out of a long unqualified possession of chattels derived from a father by a child on settling in life. To counteract that tendency, as a general mischief, is one among several sufficient reasons for the presumption of a gift, where it does not appear that it was expressly a loan. If obtaining false credit with particular persons, on the faith of property in the son’s possession; would make a
 
 quasi estoppel
 
 on the father against claiming it, the cases of express loans, and of slaves even, would be within the rule ; as, we suppose, they unquestionably are not. Our view is, that a possession ofachattel by the child under the father, not expressly as a loan, is evidence in law¡ that there was really a gift — as is known to be the actual intent of the parent in a vast majority of the instances,- in which a child receives such things from a parent.
 

 If the property was in the son, the defendant is not concerned whether the sheriff conducted the-rale properly or not. The son, and those claiming under him, can alone make the objection.
 

 Ter Cprxajj-, Judgment affirmed.